Henry Boehning for use of Himself and Connecticut Fire Insurance Company, Defendant in Error, v. Elgin, Joliet & Eastern Railway Company, Plaintiff in Error.

Gen. No. 5,913.    (Not to be reported in full.)

Error to the Circuit Court of Kane county; the Hon. MAZZINI SLUSSER, Judge, presiding. Heard in this court at the October term, 1914.    Affirmed.    Opinion filed January 6, 1915.    Rehearing denied April 8, 1915.

### Statement of the Case.

Action brought by Henry Boehning, for the use of himself and the Connecticut Fire Insurance Company, against the Elgin, Joliet & Eastern Railway Company to recover for the destruction of farm buildings by a fire alleged to have been caused by sparks from a passing locomotive. From a judgment for $7,600 in favor of the plaintiff, the defendant brings error.

Henry Boehning owned a farm on the south side of a highway east of and adjoining the right of way of the defendant's railway, with farm buildings loca-

ted about three hundred feet from the track, which was up grade for some distance each side of this point, the track being below the natural level of the ground opposite the plaintiff's premises. At about 11 a. m. of November 27, 1907, on a day when a strong wind was blowing from the southwest, at a time when everything was very dry a fire started in the south side of a straw stack at a point three hundred and forty-five feet east of the center line of defendant's track, which resulted in the destruction of all the farm buildings.

It appeared from the evidence that the only people on the premises for two or three hours before the fire were a housekeeper in the dwelling house, one hundred and twenty feet north of the straw stack, and the plaintiff's son, thirteen years old, who was working with a hired man about the farm; that there was a fire in the kitchen stove in the dwelling house and no other fire on the premises. The son testified that he and the hired man came from a field to the barn, and that the latter drove into the basement to do some work, while the boy stayed outside to shut a gate; that he was outside about ten minutes in the vicinity of the straw stack, and that he noticed no fire, but that he saw a freight train with one engine and twenty-five to forty cars going north; that it was not moving fast, that he could hear a heavy exhaust and see smoke coming from the stack like a black cloud; that he went into the barn where the hired man was working and stayed not more than fifteen minutes and when he came out the stack was on fire. John Hartman, a farmer, testified that he lived on an east and west road about two miles north of plaintiff's premises, and a little over half a mile east of the railroad; that he started from his home about 10:30 a. m., and drove west and stopped about six rods east of the railroad crossing to let a northbound freight train pass; that there were perhaps thirty cars drawn by one engine which threw out a lot of black smoke; that he felt a few cinders

148    Appellate Courts of Illinois.

Boehning v. Elgin, Joliet & Eastern Ry. Co., 193 Ill. App. 146.

flying around, and that the train was not running very fast; that he drove on after the train passed, and when about forty rods west of the track he looked south and saw a lot of smoke and in a few minutes saw flames from plaintiff's burning buildings. There was another east and west highway about two miles further north which crossed defendant's right of way under the track. A physician testified that on the forenoon of the fire he had been visiting patients in the country and was east of the defendant's right of way driving west on the last mentioned road, and that he reached the railway crossing about eleven o'clock; that he stopped about twenty rods east of the crossing to let a long northbound train pass; that it contained perhaps thirty-five or forty cars, drawn by a common-size engine running slowly and throwing out a large amount of smoke and cinders; that there was a strong wind from a little southwest, and cinders from the engine struck his buggy; that he drove across the track after the train passed and when he had gone from an eighth to a fourth of a mile he saw the smoke from the burning buildings.

The defendant introduced its train sheet kept by the train dispatcher, which showed that no train had passed north and up the grade prior to the fire on the day in question until four o'clock in the afternoon, although several trains went south in the morning, the one nearest to the time the fire being a train drawn by two engines, which passed the farm at about 10 a. m. The next train south was at about 12 m., at which time the fire was well under way and the buildings substantially burned.

It appears that in the ordinary course of business the train seen by plaintiff's witnesses could not have gone north to the point where it was said to have been seen without being reported to the train dispatcher. The testimony of the men in charge of the passing trains was also that the agent at a nearby station and one

McCarthy, employed at a railway crossing in the vicinity, who reported every train that passed to defendant's dispatcher, corroborated the statement in the train sheet as to the passing of trains on the day in question. By way of impeachment of McCarthy, it was shown by the plaintiff and his attorney that they met McCarthy some time before the trial and asked him if he saw a train going north by the Boehning farm, at or about 11 a. m., on November 27, 1907, and that McCarthy replied yes, a freight train went by, north, by Boehning's place, heavily loaded, with a small engine, and that a few minutes afterwards his attention was called to the fire. When McCarthy's attention was directed to this statement he at one time answered that he did not remember and then positively denied making it.

The engine when directly west of the stack was three hundred and forty-five feet distant, and if the wind was blowing from due southwest, a spark would have had to travel about five hundred feet before reaching the point on the stack where the fire started.

JOHN A. RUSSELL and KNAPP & CAMPBELL, for plaintiff in error; WILLIAM BEYE, of counsel.

SHOPEN & PAULSON, for defendant in error; ROBERT S. EGAN, of counsel.

MR. PRESIDING JUSTICE CARNES delivered the opinion of the court.

### Abstract of the Decision.

1. RAILROADS, § 932*—*sufficiency of evidence to show passing of train before discovery of fire.* The evidence although conflicting, in an action against a railway company for the destruction of buildings by fire caused by sparks from a locomotive, *held* to show that a train passed shortly before the discovery of the fire.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

2. RAILROADS, § 932*—*sufficiency of evidence to sustain judgment for plaintiff for destruction of buildings by fire.* The evidence although conflicting, in an action against a railway company for the destruction of buildings by fire caused by sparks from a passing locomotive, *held* sufficient to sustain a verdict for the plaintiff.

3. RAILROADS, § 941*—*peremptory instruction in action for destruction of buildings by fire.* A peremptory instruction to find for the defendant *held* properly denied in an action against a railway company for the destruction of buildings by fire caused by sparks from a passing locomotive.

4. RAILROADS, § 938*—*when· jury may find that fire was caused by sparks from locomotive.* A jury may reasonably find that cinders from a passing locomotive flew five hundred feet in a high wind and·caused a fire which destroyed the plaintiff's buildings.

5. RAILROADS, § 931*—*when question for jury whether fire caused by sparks from locomotive.* It is for the jury to determine whether a fire which destroyed the plaintiff's buildings was caused by sparks from a passing locomotive.